Opinion issued July 21, 2005























In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00003-CR




SAUL PEREZ GUERRERO, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause No. 935,836




MEMORANDUM OPINION
          Saul Perez Guerrero, appellant, pleaded not guilty to aggravated robbery. After
appellant waived his right to a trial by jury, the judge found him guilty and assessed
punishment at five years’ confinement. In three points of error, appellant contends
that (1) the evidence is legally and factually insufficient to support his conviction and
(2) the trial court abused its discretion in refusing to translate and transcribe a taped
conversation between the complainant and a private investigator. We affirm.
                                                    BACKGROUND
          On January 10, 2003, after returning from a store, complainant, Fernando
Arteaga, went to visit his wife’s uncle at the Sierra Vista apartment complex. As he
got out of his truck, two men walked toward him. One of the men called out to him,
“Hey, primo,” and asked Arteaga for an apartment number. One man had a shotgun,
which was pointed at Arteaga. Arteaga placed his hands in the air. The man with the
shotgun was tall, had a beard, long hair, and was wearing a hat. 
          The second man searched Arteaga and took his wallet, which contained
approximately $60, and $17 from his pocket. This second man had short hair, was
not tall, had an earring in his ear, and was wearing a cotton sweater. After the two
men robbed Arteaga, Arteaga asked them to return his driver’s license and
identification. The second man threw it on the ground. Arteaga flagged down two
Houston Police Officers, M. Ferguson and R. Hensarling, who were working as
security officers for the complex. Arteaga told the officers that he had been robbed
and described his assailants. 
          The officers requested a helicopter from Houston Police Department dispatch. 
The helicopter located two men walking westbound and directed the officers to a
nearby apartment complex. After the suspects separated, each officer went after one
of the two suspects. Officer Hensarling pursued the second suspect and came upon
appellant leaning up against a vehicle. Hensarling, seeing that appellant fit Arteaga’s
description of the second robber, took appellant into custody. Both officers noticed
appellant was breathing heavily as if he had been running. At the time of his arrest,
appellant was wearing a grey hooded sweatshirt and an earring. Hensarling did not
find Arteaga’s wallet on appellant. 
          Appellant’s brother, Francisco Guerrero, answered the door when Officer
Ferguson went to appellant’s apartment. Ferguson believed Francisco matched the
description of the first robber and transported him and appellant back to the scene for
Arteaga to see them. Arteaga identified appellant as the robber who had searched him
and stole his money. Although Arteaga initially identified Francisco as the robber
with the shotgun, he later changed his mind and said Francisco was not one of the
robbers. 
          Before trial, appellant’s counsel asked German Vanegas, a licensed private
investigator, to interview Arteaga about the offense. Vanegas testified at trial about
what Arteaga told him during that interview. Vanegas recorded that interview, which
was conducted in Spanish. During Vanegas’s testimony, appellant’s counsel
attempted to play the audiotape of the interview, but the State objected to admission
of this evidence and the judge sustained the objection. After the judge refused to
admit the audio recording into evidence, appellant requested that it be “transcribed.” 
The judge told appellant that he “[s]hould have already done that.”
DISCUSSION
          In his first point of error, appellant asserts that the evidence was legally
insufficient to support his conviction. Specifically, appellant contends that the trial
court’s verdict is contrary to the overwhelming weight of the evidence because the
trial court accepted the allegedly unreliable testimony of a single eyewitness who
identified appellant as the robber. 
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). As the exclusive judge of the
facts, the credibility of the witnesses, and the weight to be given their testimony, the
trier of fact may believe or disbelieve all or any part of a witness’s testimony. 
Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).
          A person commits the offense of aggravated robbery if he commits robbery and
uses or exhibits a deadly weapon. Tex. Pen. Code Ann. 29.03(a)(2) (Vernon 2003). 
A person commits robbery if, in the course of committing theft and with intent to
obtain or maintain control of the property, he intentionally or knowingly threatens or
places another in fear of imminent bodily injury or death. Tex. Pen. Code Ann.
29.02(a)(2). “In the course of committing theft” means conduct that occurs in an
attempt to commit theft, during the commission of theft, or in immediate flight after
the commission of theft. Tex. Pen. Code Ann. 29.01(1). A person commits theft if
he unlawfully appropriates property with the intent to deprive the owner of the
property. Tex. Pen. Code Ann. 31.03(a). 
          Appellant contends the evidence is legally insufficient to prove that he
committed the offense of aggravated robbery because (1) Arteaga did not have a good
opportunity to look at the robber’s face; (2) Arteaga’s testimony regarding the type
of earrings worn by the robber differs from the type of earring appellant was wearing
when he was arrested; (3) Arteaga testified that the robber was short while appellant
is one inch taller than Arteaga himself; (4) appellant did not have any money on him
when arrested merely 20 minutes after the robbery occurred; and (5) Arteaga’s
identification of appellant as the robber was, in part, based on appellant’s silence
upon being handcuffed by the police. 
          During the robbery, Arteaga had an opportunity to see the face of the man who
searched him and took his wallet and money. Based on his observation of this robber,
Arteaga provided a description to the police of both the man who searched him as
well as the man who held the shotgun. Arteaga indicated that the robber who
searched and robbed him was short; appellant is 5'7". Shortly after the robbery,
Arteaga identified appellant as the person who searched and robbed him. At trial,
testifying in Spanish through an interpreter, Arteaga identified appellant as the same
person who had searched him and taken his wallet and money on January 10, 2003. 
Although Arteaga was the only witness to the robbery, this does not render the
evidence insufficient. It is well established that a conviction may be based on the
testimony of a single eyewitness. Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim.
App. 1971); Lewis v. State, 126 S.W.3d 572, 575 (Tex. App.—Texarkana 2004, pet.
ref’d). 
          Viewing the evidence in the light most favorable to the verdict, a rational trier
of fact could have found that appellant committed robbery while using or exhibiting
a deadly weapon. Accordingly, we hold that the evidence was legally sufficient to
support appellant’s conviction for aggravated robbery. 
          We overrule appellant’s first point of error.
Factual Sufficiency
          In his second point of error, appellant asserts that the evidence was factually
insufficient to support his conviction. In our factual-sufficiency review, we view all
of the evidence in a neutral light, and we will set the verdict aside only if the evidence
is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary
evidence is so strong that the standard of proof beyond a reasonable doubt could not
have been met. Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004)
(citing Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004)). We must
defer to the fact finder to avoid substituting our judgment for the judgment of the fact
finder. Zuniga, 144 S.W.3d at 482. Our evaluation may not intrude upon the fact
finder’s role as the sole judge of the weight and credibility accorded any witness’s
testimony. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). The fact
finder alone determines what weight to give contradictory testimonial evidence
because that question depends on how the fact finder evaluates credibility and
demeanor. Id. As the one who determines the credibility of the witnesses, the fact
finder may choose to believe all, some, or none of the testimony presented. See id.
at 408. 
          In conducting a factual-sufficiency review, we must discuss the evidence that,
according to appellant, most undermines the trier of fact’s verdict. Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003). Appellant contends the evidence is
factually insufficient because (1) there is no physical evidence linking appellant to
the offense; (2) appellant was never seen in the apartment complex in which the
offense occurred; (3) the State relied heavily on the testimony of one eyewitness,
whose identification of appellant is highly suspect; (4) appellant had an explanation
for his presence in the parking lot where the police encountered him minutes after the
robbery occurred; (5) the testimony of Miguel Reyes was consistent with appellant’s
explanation as to why he was in the parking lot; (6) the testimony of appellant’s
family was consistent with appellant’s explanation; (7) physical evidence was
admitted that was consistent with appellant’s explanation; (8) Gerardo Orrozco saw
the two men that the police helicopter tracked into appellant’s apartment complex and
testified that appellant was not one of those men; and (9) witnesses testified to
appellant’s character as a law-abiding person. 
          At trial, Officer Ferguson, Officer Hensarling, and appellant testified for the
State. Although the State did not present physical evidence that appellant robbed
Arteaga, their testimony provided circumstantial evidence that appellant committed
the offense. The lack of physical evidence is merely a factor for the trier of fact to
consider when weighing the evidence. Johnson v. State, No.01-03-00319-CR, 2004
WL 1472064, at *3 (Tex. App.—Houston [1st Dist.] July 1, 2004, pet. ref’d). The
lack of physical evidence alone does not render the evidence factually insufficient to
support a conviction. See id. 
          Although appellant claims that appellant was never seen in the apartment
complex in which the offense occurred, this assertion is inconsistent with the
testimony heard at trial. Arteaga testified at trial that appellant was the man who
searched him and took his wallet while he was at the Sierra Vista apartment complex
on January 10, 2003. 
          Appellant claims that the State’s case relied entirely on Arteaga, whose
testimony was highly suspect and whose identification of appellant was unreliable. 
However, as stated above, the testimony of one eyewitness may be sufficient to
uphold a conviction. Lewis, 126 S.W.3d at 575.
          Appellant’s remaining contentions under this point of error merely address
facts that are not inconsistent with appellant having committed the offense in
question. Examining all of the evidence neutrally, we conclude that the proof of guilt
was not so obviously weak as to undermine confidence in the trier of fact’s
determination, nor was the contrary evidence so strong that it greatly outweighed the
proof of guilt. 
          Accordingly, we overrule appellant’s second point of error. 
Transcribed Taped Interview
          In his third point of error, appellant asserts that the trial court abused its
discretion in refusing to translate and transcribe the taped interview between private
investigator, Vanegas, and complainant, Arteaga, from Spanish to English after
appellant attempted to admit the audiotape of the interview into evidence. 
Specifically, appellant contends that Arteaga’s words as recorded on the audiotape
constituted the best impeachment evidence available on the issue of appellant’s
identity as one of the robbers. But, at trial, appellant did not object on this theory of
law. In fact, appellant did not object at trial, but merely responded to the State’s
relevancy objection to the admission of the audio recording.


 After sustaining the State’s objection, the trial court excluded the evidence.



          Article 38.30 of the Code of Criminal Procedure governs the use of interpreters
in criminal proceedings. It states, in relevant part, 
When a motion for appointment of an interpreter is filed by
any party or on motion of the court, in any criminal
proceeding, it is determined that a person charged or a
witness does not understand and speak the English
language, an interpreter must be sworn to interpret for him.
 
Tex. Code Crim. Proc. Ann. art. 38.30(a) (Vernon 2005) (emphasis added). In
applying this statute to a non-English-speaking witness, the Court of Criminal
Appeals has stated
In the face of a proper motion or objection an interpreter
must be sworn to translate the conversation, so long as the
interpreter is ‘considered to possess adequate interpreting
skills for the particular situation’ and is ‘familiar with the
use of slang’ to the satisfaction of the trial court.
 
Leal v. State, 782 S.W.2d 844, 849 (Tex. Crim. App. 1989). The Court has
emphasized the importance of a sworn interpreter both in translating a non-English
conversation for the finder of fact and in translating the testimony of a witness on the
stand so as to be subject to cross-examination by the non-offering party. See id.
(holding that trial court erred in admitting Spanish tape recording without recording
having been translated into English by a sworn interpreter, despite presence of
English transcript provided by the State and relied upon by the jury). In Leal, the
Court analogized a situation involving a tape recording of witnesses speaking Spanish
that had been admitted into evidence to a non-English-speaking witness testifying in
court. Id. at 849-50; see Garza v. State, 996 S.W.2d 276, 281 (Tex. App.—Dallas
1999, pet. ref’d) (“When a tape recording of a conversation in a foreign language is
admitted into evidence, the situation is analogous to when a non-English speaking
witness testifies, and the safeguards of code of criminal procedure article 38.30
apply.”). Because a sworn interpreter was not called upon by the trial court to
translate the admitted tape recording containing the conversation, the trial court in
Leal did not comply with Article 38.30. Id. at 849. Therefore, the trial court in Leal
“erred when it admitted the tape recording into evidence without it being translated
from Spanish to English by a sworn interpreter.” Id. at 849-50.
Use of Interpreter
          Here, appellant’s private investigator, Vanegas, recorded an interview with
Arteaga on May 7 and 8 in Spanish. Appellant attempted to offer the audiotape into
evidence, but the court sustained the State’s relevancy objection to admission of the
entire audiotape after confirming that the interview was in Spanish. Whereas the tape
recording in Leal was admitted into evidence, here the audiotape of Vanegas and
Arteaga was excluded. When appellant sought to have a transcript of the interview
translated into English made, the court responded that appellant “[s]hould have
already done that.” Even after appellant sought to admit an English transcript that he
had already prepared, albeit with inaccuracies, the court refused to admit the
inaccurate English transcript of the interview into evidence. 
          Assuming without deciding that the trial court erred in not translating the
audiotape from Spanish to English, we must determine if the error was harmless. In
our review of nonconstitutional error, we are to disregard errors, defects,
irregularities, or variances that do not affect substantial rights of the accused. Tex.
R. App. P. 44.2(b). To determine whether an error “affect[ed] substantial rights,” we
consider whether a party had a right to that which the error denied. Johnson v. State,
72 S.W.3d 346, 348 (Tex. Crim. App. 2002).
          Appellant wanted to use an English translation of the “actual words of the
complainant” for impeachment purposes on the issue of identity. Appellant does not
contend that Arteaga’s comments on identity were not admitted at trial through the
testimony of Vanegas, but only that the exact words used by Arteaga when he spoke
to Vanegas on identity were not heard by the trial court. Appellant believes this is an
important distinction because “[w]hat the tape reveals the complainant said is more
persuasive than what someone says the complainant said.” Because the trial court
heard Vanegas’s testimony as to what Arteaga told him on the issue of identity, the
trial court was still able to weigh any differences between Arteaga’s trial testimony
and the testimony of Vanegas as to what he was told by Arteaga during their tape-recorded interview in Spanish. Because the trial court heard both Vanegas’s
testimony and that of Arteaga, error, if any, from the trial court’s refusal to have a
sworn interpreter translate the audiotape did not have any more than a slight effect,
and was thus harmless. See Sanchez v. State, 122 S.W.3d 347, 352 (Tex.
App.—Texarkana 2003, pet. ref’d). 
Confrontation Clause
          Moreover, appellant argues in his brief that the trial court’s refusal to order the
interpreter to translate or transcribe the audiotape violated appellant’s fundamental
right to confrontation under the United States Constitution.
          In Baltierra v. State, the Court of Criminal Appeals acknowledged that the
Confrontation Clause requires that the court provide an interpreter to a non-English
speaking accused. 586 S.W.2d 553, 556-59 (Tex. Crim. App. 1979). More recently,
in Miller v. State, this Court held that the Confrontation Clause requires that an
interpreter be provided to “an accused to confront a material witness who does not
understand English . . . .” Nos. 01-03-01035-CR, 01-03-01038-CR, 2004 WL
2538286, at *4 (Tex. App.—Houston [1st Dist.] Nov. 10, 2004, no pet.). Once a trial
court becomes aware of a material witness’ language problem, it has an independent
duty to implement a defendant’s confrontation rights by securing an interpreter to
translate for the material witness. Id. at *6. 
          Here, Arteaga was a material witness and he had difficulty speaking English. 
However, all Arteaga’s trial testimony on the stand was translated by a sworn
interpreter. Even Arteaga’s cross-examination by appellant’s counsel was conducted
in English with the aid of the interpreter. The only exhibit that was not translated was
the audiotape of the Spanish interview of Arteaga by Vanegas. Assuming without
deciding that the trial court erred in not implementing appellant’s confrontation rights
under the Sixth Amendment to the United States Constitution, we must determine if
there was harm. 
          In regard to harm, the record does not reflect what questions appellant would
have asked Arteaga on cross-examination had the audiotape been translated into
English. However, the record does reflect that appellant cross-examined Arteaga
when Arteaga took the stand to testify on behalf of the State. Because it was
appellant’s own exhibit that contained the Spanish interview and because appellant
had an English transcript of the interview, appellant should have known its substance. 
Knowing the substance of the interview, appellant should have been able to cross-examine Arteaga when he first took the stand. Appellant was able to cross-examine
Arteaga once, but chose not to address his interview with Vanegas during that cross-examination. Appellant cannot complain that he was deprived of his constitutional
right to cross-examination because appellant was responsible for failing to cross-examine Arteaga through the sworn interpreter when Arteaga took the stand at trial. 
Therefore, we find beyond a reasonable doubt that the trial court’s error, if any, in not
implementing appellant’s confrontation rights did not contribute to appellant’s
conviction. Tex. R. App. P. 44.2(a). 
           Accordingly, we overrule appellant’s third point of error.
CONCLUSION
          We affirm the judgment of the trial court.
 
 
                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Higley and Bland.
Do not publish. Tex. R. App. P. 47.2(b).